**CALVIN KLEIN COSMETICS CORPO-
RATION, Appellee/Cross-Appellant,**

v.

**LENOX LABORATORIES, INC.,
Appellant/Cross-Appellee.**

Nos. 86–5489, 87–5005.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1987.

Decided March 31, 1987.

Alfred T. Lee, New York City, for appellant/cross-appellee.

Alan G. Carlson, Minneapolis, Minn., for appellee/cross-appellant.

Before LAY, Chief Judge, WOLLMAN and MAGILL, Circuit Judges.

LAY, Chief Judge.

Lenox Laboratories (Lenox) appeals from an order granting in part the motion of Calvin Klein Cosmetics Corporation (Calvin Klein) for a preliminary injunction to enjoin the use of certain packaging and display materials in the distribution and sale of Lenox products.[1] Calvin Klein claims that Lenox's displays and packages infringe on Calvin Klein's trademark rights in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125. For the reasons stated below, we vacate the preliminary injunction pending trial on the merits.

Calvin Klein sells high-fashion cosmetics, including fragrances. The subject of this litigation is a perfume contained in a distinctive oval-shaped bottle that is marketed by Calvin Klein under the registered trademark OBSESSION and that retails for approximately $55 per quarter ounce. Lenox markets a copy of OBSESSION perfume as part of its group of designer perfume imitations, which it calls THE GREAT PRETENDERS. Lenox sells its copy of OBSESSION in a flower-shaped bottle (the "Crystal Rose") for under $10 per quarter ounce. Calvin Klein seeks to enjoin Lenox from the manner in which it uses the trademark OBSESSION or a picture of the OBSESSION bottle in its packaging and store display materials. It contends that Lenox uses the OBSESSION trademark in a prominent manner that is likely to cause consumer confusion and infringes on Calvin Klein's trademark rights in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Lenox responds that there is no likelihood of consumer confusion because the disclaimers on its displays and packages disclose that its product is a copy unaffiliated with Calvin Klein. Lenox also contends that its use of the OBSESSION trademark is for truthful and non-misleading comparative advertising purposes. Following the grant on December 13, 1985, of Calvin Klein's motion for a temporary restraining order, the district court[2] in February, 1986, preliminarily enjoined Lenox's use of various store displays and perfume packages that used the OBSESSION trademark and denied Lenox's motion to dismiss for improper venue or for transfer. Lenox appealed to this court, raising only venue and other procedural issues, and we affirmed.[3]

After the district court's February, 1986, entry of preliminary injunctive relief, Lenox redesigned its displays and packaging and introduced new packaging and store displays for a purse spray version of its copy of OBSESSION. In September, 1986, Calvin Klein moved for another temporary restraining order and preliminary injunction. Lenox moved to strike Calvin Klein's motion. A hearing was held, and on December 18, 1986, the district court denied Lenox's motion to dismiss and granted in part Calvin Klein's motion for a preliminary injunction. The district court preliminarily enjoined Lenox from using three in-store displays and the purse spray packaging in the sale and distribution of its imitation of OBSESSION and from using any other packaging, displays, or other materials likely to mislead the public into believing that any Lenox perfumes are in some way associated with Calvin Klein. The district court did not enjoin Lenox from using the redesigned Crystal Rose packaging. Both parties appeal: Calvin Klein seeks to extend the preliminary injunction to include

1. Calvin Klein cross-appeals from the order to the extent that it denied part of Calvin Klein's preliminary injunction motion and allowed the continued use by Lenox of certain other product packaging.

2. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, presiding.

3. In our December 12, 1986, 808 F.2d 841 (8th Cir.), summary affirmance of the district court's orders, we held that there was no error in the court's venue rulings and that the evidentiary hearing prior to the grant of that preliminary injunction was sufficient. We did not pass on the merits as to the grant of that preliminary injunction since the merits were not briefed or argued. Nevertheless, under the rules of issue preclusion, our December, 1986, affirmance includes all issues, whether raised or not, related to the subject matter of that first preliminary injunction.

the Crystal Rose package; Lenox asks that the preliminary injunction be completely vacated.[4]

■ In the memorandum opinion accompanying its order granting preliminary injunctive relief, the district court applied the four-part standard we set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc). Under *Dataphase*, the extraordinary remedy of a preliminary injunction should not be granted unless the movant has demonstrated: (1) the threat of irreparable harm to it; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that it will succeed on the merits; and (4) the public interest. *Id.* at 113–14. No single factor in itself is dispositive; in each case all the factors must be considered to determine whether on balance they weigh towards granting the injunction. *Id.* at 113. The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when, as here, granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. 2 J. McCarthy, *Trademarks and Unfair Competition* 482 (1984). On appeal, this court may not disturb the district court's balancing of the equities absent a clearly erroneous factual determination, an error of law, or an abuse of discretion. *West Publishing Co. v. Mead Data Center, Inc.*, 799 F.2d 1219, 1222–23 (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *see White House Vigil for ERA Committee v. Watt*, 717 F.2d 568, 571 (D.C.Cir.1983) (district court abuses its discretion in granting preliminary injunction if it bases its analysis on an erroneous legal premise or is clearly wrong in its conclusions). After review of the record as it now stands and of the applicable case law, we hold that the district court's conclusion that the equities on balance favor injunctive relief is erroneous

and that it was an abuse of discretion to issue the preliminary injunction.

■ First, the district court erred in concluding that Calvin Klein demonstrated probable success on the merits. Because "[t]he very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability test," *Dataphase*, 640 F.2d at 113, the focus in determining probable success should not be to apply the probability language with mathematical precision. Rather, a court should flexibly weigh the case's particular circumstances to determine "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.*

■ The parties do not dispute that Lenox may copy, if it can, the scent marketed as OBSESSION. *See, e.g., Smith v. Chanel, Inc.*, 402 F.2d 562, 563 & n. 3 (9th Cir.1968). Moreover, the parties agree that the issue here is not whether to completely bar Lenox from any use of the OBSESSION mark. A trademark is not a monopoly on the use of a name or a phrase. Rather, the legal relevance of a trademark is to show the source, identity, sponsorship, or origin of the product. *See Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731 (1924) (Holmes, J.) (use of originator's registered trademark by firm that repackaged originator's cosmetics products upheld); *Chanel*, 402 F.2d at 566 (use of originator's mark to market copy of Chanel No. 5 perfume upheld). An imitator may use in a truthful way an originator's trademark when advertising that the imitator's product is a copy so long as that use is not likely to create confusion in the consumer's mind as to the source of the product being sold. *Chanel*, 402 F.2d at 563; *Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 36 (2d Cir.1962) (use of French couturier's name—Christian Dior—on copies of

4. An order was issued on December 24, 1986, granting in part Lenox's motion for an emergency stay of the December 18 preliminary injunction only to the extent that the preliminary injunction might be interpreted to apply to retailers selling or displaying the enjoined materials.

Dior designs upheld); 15 U.S.C. § 1114(1) (registered mark cannot be used without registrant's consent if such use is likely to cause confusion or mistake, or to deceive). The underlying rationale is that an imitator is entitled to truthfully inform the public that it believes that it has produced a product equivalent to the original and that the public may benefit through lower prices by buying the imitation. *Saxlehner v. Wagner*, 216 U.S. 375, 380–81, 30 S.Ct. 298, 298–99, 54 L.Ed. 525 (1910) (Holmes, J.); *Chanel*, 402 F.2d at 567–68.

When the grant of a preliminary injunction rests largely on a decision that the movant has demonstrated probable success in showing likelihood of confusion, there is a division of opinion as to the scope of appellate review. In *Frito-Lay, Inc. v. So Good Potato Chip Co.*, 540 F.2d 927 (8th Cir.1976), a breach of contract case that applied trademark infringement law, we stated: "We do not say that six eyes are necessarily apt to reach a more accurate assessment than are two, but, under the standard of review applicable in this case, our six eyes tell us that [there is a deceptive similarity]." *Id.* at 931. In contrast, the panel in *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir.1980), stated what appears to be a widely accepted view that likelihood of confusion is a finding of fact. *Id.* at 1091. Significantly, however, in the context of reviewing a denial of a motion for a preliminary injunction in a trademark infringement action, the Second Circuit stated that "where it is plain that the disposition is in substantial measure a result of the lower court's view of the law, which is inextricably bound up in the controversy, the appellate court can and should review such conclusions." *Alexander's*, 299 F.2d at 36.

 Because we may review the district court's likelihood of confusion determination when, as here, its conclusions are inextricably bound up in its view of the law, we conclude that the district court's opinion failed to take into account sufficient evidence on which to base its determination of Calvin Klein's probable success on the merits. A multitude of factors that a court may consider in determining likelihood of confusion has been articulated by this and other courts. *See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir.1983) (citing Restatement of Torts § 729 (1938)); *SquirtCo*, 628 F.2d at 1091 (listing factors). However, while no particular factors are determinative, neither should excessive importance be placed on any one factor to the exclusion of others. *See Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 934 (7th Cir.1984); *Beer Nuts*, 711 F.2d at 940.

 Here, the district court's determination of Calvin Klein's probable success in demonstrating likelihood of confusion was based exclusively on the court's own visual inspection of the perfume packages and store displays. Its opinion does not refer to any other evidence before it from which actual or likely consumer confusion could be inferred. A court does, of course, have broad discretion in the weight it chooses to give all materials submitted by the parties. *See SquirtCo*, 628 F.2d at 1091. Here, the court did not indicate the weight, if any, that it gave any other evidence offered by the parties, such as consumer surveys and affidavits of experts regarding the effect of the materials on consumers. Visual inspections by the court are permissible as an aid in determining likely confusion. *Caron Corp. v. V. Vivaudou, Inc.*, 4 F.2d 995, 997 (2d Cir. 1925) (reversing grant of injunction pendente lite on grounds of insufficient evidence of consumer confusion). However, caution should be exercised to avoid putting too much stock in a subjective inspection done in-chambers that is devoid of market characteristics. *See, e.g., Beer Nuts*, 711 F.2d at 941–42. A realistic evaluation of consumer confusion must attempt to recreate the conditions in which buying decisions are made, and the court should try to determine not what it would do, but what a reasonable purchaser in market conditions would do. In light of these concerns, the district court's in-chambers visual inspection by itself, in the absence of reference to any other supporting evidence that could give rise to an inference of likely consumer confusion, was too narrow a context on

which to base a conclusion of probable success on the merits. *See Thompson Medical Co., Inc. v. Pfizer, Inc.*, 753 F.2d 208, 218 (2d Cir.1985) (in vacating grant of preliminary injunction, court stated that district court's finding of likely confusion "was made precipitously" because based solely on analysis of one factor to the exclusion of others).

We turn next to the district court's evaluation of the public interest, which focused on the consumer's right not to be confused as to the origin or source of the goods. By the very nature of a trademark action, the value placed on free competition must be weighed against any individual's property interest in that trademark, so that the analytic focus should also be on the consumer's ability to obtain the lowest priced goods. *See Alexander's*, 299 F.2d at 37 (true nature of a trademark infringement action may be an attempt to shield against competition). That strong public interest in lowest possible prices was not taken into account here; neither was the interest in avoiding monopolies and in encouraging, not stifling, competition. *See Chanel*, 402 F.2d at 566–67 (citing *Saxlehner*, 216 U.S. at 380, 30 S.Ct. at 298–99.). Here, the fact that the district court did not appear to consider the broader economic implications of its grant of the preliminary injunction, as is required by the applicable case law, leads us to conclude that it was erroneous for the district court to determine that the public interest weighed in favor of granting Calvin Klein's motion for a preliminary injunction.

Finally, we review the district court's conclusion that Calvin Klein demonstrated a threat of irreparable harm and that the balance of hardships tipped towards Calvin Klein. The district court concluded that Calvin Klein as the originator was in danger of suffering damage to its reputation and to its established goodwill. It further concluded that should Lenox ultimately prevail on the merits, Lenox could be compensated in money damages for any harm it incurred from the injunction. The court correctly noted that it could presume irreparable injury from a finding of probable success in proving likelihood of confusion. *See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 (8th Cir.1980). Because we find that the district court erred in concluding that Calvin Klein had demonstrated probable success on the merits, its findings that the irreparable harm and balance of hardships factors also weigh in Calvin Klein's favor are insufficient to support the grant of the preliminary injunction.

The order of the district court is affirmed as to its refusal to preliminarily enjoin the use of the Crystal Rose package and reversed as to the use of the packages and displays preliminarily enjoined under the district court's December 18, 1986, order. The preliminary injunction issued by the district court on December 18, 1986, is vacated without prejudice to the entry of subsequent injunctive relief, if during or after trial on the merits it appears that such relief should be granted.[5]

---

5. Calvin Klein also argues that a preliminary injunction is appropriate because Lenox's use of the OBSESSION trademark causes the mark to become generic. Because this issue was not addressed by the district court and does not appear to have been raised below, we think it best not to address the merits here. Rather, the parties should first argue this claim before the district court in further evidentiary proceedings related to the permanent injunction. For similar reasons, we also do not address Lenox's first amendment challenge to the entry of injunctive relief.