DAKOTA INDUSTRIES, INC., Appellant,

v.

EVER BEST LTD., Dakota Blue Corp., Carl Eckhaus, Sam Ko and Kenneth Kwok, Appellees.

No. 91–1036.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1991.

Decided Sept. 12, 1991.

---

James A. Hertz, Sioux Falls, S.D., for appellant.

Gary S. Graifman, Chestnut Ridge, N.Y., argued (Gary S. Graifman and William P. Fuller, on the brief), for appellees.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Plaintiff appeals from the district court's[1] denial of its motion for a preliminary injunction enjoining defendants from using the word "DAKOTA" in connection with their marketing and sale of denim clothing. The district court denied preliminary relief on the basis of the evidence plaintiff had presented "to date." We agree with the court's assessment that the propriety of injunctive relief in this case should be determined in conjunction with a trial on the merits and, accordingly, we affirm the court's denial of plaintiff's motion for a preliminary injunction.

## I.

Plaintiff Dakota Industries is a manufacturer of clothing in Tea, South Dakota. Plaintiff has been in the clothing business twenty-three years. In 1970, plaintiff applied for trademark registration for the trademark DAKOTA. The trademark was registered on August 22, 1972, and was approved as an incontestable trademark on August 15, 1978. Plaintiff has entered into a licensing agreement with M. Fine & Sons, which allows M. Fine to use the DAKOTA trademark on men's and boy's jeans. Pursuant to this licensing arrangement, M. Fine has manufactured and sold jeans with labels bearing the words DAKOTA and DAKOTA BLUES. Plaintiff also manufactures its own line of men's and women's clothing, which has included various styles of pants, jackets, and outerwear, and which bears the name DAKOTA.

In 1988, defendant Carl Eckhaus left his position as a design executive at Jordache to form his own company, Dakota Blue Corp. In 1989, Dakota Blue began shipping into the United States through a company called Ever Best Ltd. a line of women's denim clothing manufactured in China and Hong Kong bearing the words "DAKOTA BLUE." Plaintiff sought a preliminary injunction in August, 1989, restraining Dakota Blue and Ever Best from the unlicensed use of the word "DAKOTA." This motion was denied.

In May, 1990, plaintiff received information that defendants intended to enter the men's clothing line. Plaintiff attempted to obtain samples of the men's line in Hong Kong in July, 1990, and in New York in August, 1990, with only limited success.

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Plaintiff renewed its motion for preliminary relief, arguing that defendants' proposed expansion into the men's line would create even greater likelihood of customer confusion. The court again denied the motion. Plaintiff has appealed.

## II.

Trademarks such as DAKOTA are used by manufacturers to signify to consumers that all goods bearing the trademark come from the same source and are of an equal level of quality. Trademarks also serve as the objective symbol of a business's good will and are a prime instrument in advertising and selling goods. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* §§ 3:1–3:5 (1984). The Lanham Act extends trademark protection to any "word, name, symbol, or device" used to identify a manufacturer's or merchant's goods and distinguish them from those manufactured by others. 15 U.S.C. § 1127.

 The Act prohibits use of any reproduction, counterfeit, copy, or colorable imitation of a registered mark which is likely to cause confusion among consumers. 15 U.S.C. § 1114. Section 1116 of the Act authorizes injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent any trademark infringement. *Id.* § 1116(a). As the district court properly recognized, in evaluating a motion for preliminary relief under the Act, the court must consider: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 503 (8th Cir.1987); *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 113–14 (8th Cir.1981) (en banc).

 The burden of demonstrating that a preliminary injunction is warranted is a heavy one where, as here, granting the preliminary injunction will give plaintiff substantially the relief it would obtain after a trial on the merits. *Calvin Klein,*

815 F.2d at 503 (citing 2 J. McCarthy, *Trademarks and Unfair Competition,* § 30:15 at 482 (1984)). Plaintiff's request for preliminary relief was, in this case, based on less than a complete record, in part because of difficulties plaintiff had encountered in obtaining discovery from defendants. Evaluating the plaintiff's likelihood of success on the basis of such a record is a difficult task. *See generally* 2 J. McCarthy, *Trademarks and Unfair Competition* § 30:16 at 486 (1984).

Plaintiff argues the district court misapplied the relevant factors identified by this Court in *SquirtCo v. Seven–Up Co.,* 628 F.2d 1086, 1091 (8th Cir.1980), in concluding the likelihood of confusion was "a toss-up." Plaintiff contends, for example, that the court applied too strict a standard in determining the similarity of the marks themselves by limiting its inquiry to a visual inspection. *See generally Calvin Klein,* 815 F.2d at 504. Plaintiff also contends that the court defined the issue of defendants' intent too narrowly. *See Lois Sportswear, U.S.A. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir.1986); *Black Hills Gold Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d 746, 751 (8th Cir.1980) (finding unfair competition under section 43(a)).

The district court's finding that the likelihood of confusion was a "toss-up" appears based primarily on the court's assessment that defendants' jeans are highly ornamented designer jeans, which sell to a different market than plaintiff's more moderately priced and styled jeans. The district court made this finding, however, without a full review of defendants' product line and without the benefit of defendants' customer list. Plaintiff has cited at least one overlapping retailer currently selling both DAKOTA blue jeans and DAKOTA BLUE jeans, and may, at the time of trial, have a more complete picture of defendants' retailing efforts. *Cf. Lois Sportswear,* 799 F.2d at 874 (overlapping market segments for jean products). We note in any event that lack of direct competition is not controlling: it is but one factor to consider in determining the ultimate question of whether consumers would be likely to be confused as to

source. *See generally id.* at 872; 2 J. McCarthy, *Trademarks and Unfair Competition* §§ 24:1–24:12 (1984).

In addition to evaluating plaintiff's likelihood of proving customer confusion, the district court also considered the equities of plaintiff's request for preliminary relief. In balancing the threat of irreparable harm to the plaintiff pending a full trial on the merits with the harm to defendants, the court concluded the hardship to defendants, with several million dollars of merchandise in their pipeline, would greatly exceed any hardship to the plaintiff pending trial. The court further held the public's interest in being offered the widest range of merchandise in all price brackets would best be served by denying the injunction. We find no reversible error in the court's weighing of the available evidence. *See generally Calvin Klein,* 815 F.2d at 504–05.

### III.

The district court's judgment denying plaintiff's request for preliminary relief is affirmed. Plaintiff's right to injunctive relief must be determined after a trial in which plaintiff is able to present all relevant evidence for the court's consideration. Each party shall bear its own costs in this appeal.