**DAKOTA INDUSTRIES, INC., Appellant,**

v.

**DAKOTA SPORTSWEAR,
INC., Appellee.**

**No. 92–1656.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1992.

Decided March 12, 1993.

Donald N. Srstka, Sioux Falls, SD, argued, for appellant.

Scott A. Hindman, Sioux City, IA, argued (F. Joseph Du Bray, on the brief), for appellee.

Before MAGILL and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

BEAM, Circuit Judge.

Dakota Industries ("Industries") appeals the denial of its motion for a preliminary injunction in this trademark infringement action against Dakota Sportswear ("Sportswear"). We vacate and remand to the district court for reconsideration in light of new evidence.

## I. BACKGROUND

In 1972, Industries became the holder of Federal Trademark Registration No. 941,-497 for use of the trademark DAKOTA for snowmobile suits, jackets, coats, coveralls, ski pants and jackets, and jumpsuits in U.S. Class 39, International Class 25. In 1978, the trademark became an incontestable trademark under 15 U.S.C. § 1065. Industries manufactures apparel, primarily sportswear, insulated work clothing, and sporting-type outdoor clothing, at least some of which is sold under the DAKOTA mark. Industries has also licensed its trademark to M. Fine and Sons who use it primarily on men's and boys' discount jeans.

Sportswear manufactures a variety of women's clothing in regular and large sizes under the Dakota Sport label. Sportswear employs at least three different marks for its clothing, all of which include the word Dakota.

In January 1990, Industries filed a trademark infringement action against Sportswear under the Lanham Act, 15 U.S.C. §§ 1051–1127. The district court granted Sportswear's motion to dismiss for lack of personal jurisdiction and venue. On appeal, a panel of this circuit reversed, and remanded the case to the district court for a trial on the merits. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir.1991). Industries then filed a motion for a preliminary injunction. After a hearing, the district court denied the motion. This decision was based on an analysis of one of Sportswear's Dakota marks. The district court did not know of the two other Dakota marks employed by Sportswear, and therefore did not consider or evaluate these other marks when ruling on Industries' motion for a preliminary injunction. Thus, the district court's decision to deny a preliminary injunction was based on

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

an incomplete analysis of the situation between the parties.

## II. DISCUSSION

■ A district court has broad discretion when ruling on requests for preliminary injunctions, and we will reverse only for clear error, an error of law, or an abuse of discretion. *General Mills Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir.1987). Ordinarily, we defer to the discretion of the district court and accept its conclusions of fact unless they constitute an abuse of discretion. However, this case is not at all ordinary. While the district court did not abuse its discretion, it suffered under a misconception that prevented a genuine application of that discretion to all facets of this case.

Photographs attached to Appellant's Reply Brief clearly document that Sportswear employed at least three different marks bearing the name Dakota. The district court based its denial of Industries' motion for a preliminary injunction, at least in part, on an analysis of what it believed to be Sportswear's only mark. Before we review the district court's denial of Industries' motion for a preliminary injunction we must resolve the issue of whether we can consider evidence on appeal that was not before the district court.

### A. *New Evidence*

■ Generally, an appellate court cannot consider evidence that was not contained in the record below. However, this rule is not etched in stone. When the interests of justice demand it, an appellate court may order the record of a case enlarged. *Turk v. United States*, 429 F.2d 1327, 1329 (8th Cir.1970); *see Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir.) ("while federal courts do not often supplement the record on appeal with evidence not reviewed by the court below, it is clear that the authority to do so exists"), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982);

*see also United States v. Aulet*, 618 F.2d 182, 187 (2d Cir.1980) (finding that the appellate court has authority under Fed. R.App.P. 10(e) to supplement a record on appeal); *Castle v. Cohen*, 840 F.2d 173, 180 n. 12 (3d Cir.1988) (same). This authority to enlarge a record is rarely exercised and is a narrow exception to the general rule that an appellate court may consider only the record made before the district court. *See Ross v. Kemp*, 785 F.2d 1467, 1474–76 (11th Cir.1986) (examining the rationales behind various courts' decisions to enlarge records on appeal).

■ We are faced with a situation in which misrepresentation, willful or otherwise, left the district court with an incomplete picture of the infringement alleged by Industries. Perhaps we would apply a different analysis if this information had come to light after a full trial on the merits of the complaint. In such a scenario, the diligence of Industries' discovery process might be called into question, and the failure to produce all three marks employed by Sportswear might be attributed to poor litigation skills on the part of Industries' attorneys. However, this case is far different from the one hypothesized above. Discovery has not yet been completed, and there has been no trial on the merits. Further, we are left with the impression that Sportswear has been less than forthcoming with the court.[1]

By failing to inform the district court that it employed three marks, rather than merely the single mark analyzed in the opinion below, Sportswear prevented the court from fully and fairly deciding whether a preliminary injunction should be issued. Industries, therefore, cannot be charged with neglect for failing to bring Sportswear's multiple Dakota marks to the attention of the district court. If an appellate court could never consider new evidence in such cases, parties would have a distinct incentive to deceive the district courts, and the appellate courts would be

---

1. Sportswear's statements to the district court leave the distinct impression that only one Dakota mark was at issue in this case. We make no findings as to whether Sportswear's conduct rises to the level of deliberate deception, but note that such a determination is best left to the district court on remand.

powerless to remedy such deceptions. We make no general holding as to when an appellate court can consider evidence not contained in the record below, but find that in this case the interests of justice require that we do so.

### B. *Preliminary Injunction*

A registered trademark owner may petition for injunctive relief in a trademark infringement action under 15 U.S.C. § 1116(a). Such relief should be granted only if a petitioner can demonstrate that it is threatened with irreparable harm; that this harm outweighs any injury which granting the injunction will inflict on other parties; that the movant will probably succeed on the merits; and that the public interest favors an injunction. *General Mills*, 824 F.2d at 624; *Calvin Klein Cosmetics Corp. v. Lenox Lab., Inc.*, 815 F.2d 500, 503 (8th Cir.1987); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc). No single factor is dispositive. All of the factors must be considered to determine whether the balance weighs towards granting the injunction. *Calvin Klein*, 815 F.2d at 503.

When determining the probability of success on the merits in a trademark infringement action, a court must consider the factors set forth in *SquirtCo. v. Seven-up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). These factors include: (1) the strength of the mark; (2) the similarity between the marks; (3) the competitive proximity of the products; (4) the intent of the alleged infringer to pass off its goods as those of the trademark holder; (5) the incidents of actual confusion; and (6) the degree of care likely to be exercised by potential customers.[2] *Id.; Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 399 (8th Cir.1987), *cert. denied*, 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988).

The district court correctly analyzed the case under the factors set forth in *SquirtCo*. If we were merely reviewing the district court's application of the *SquirtCo* factors, we would have no grounds for reversal. The district court thoroughly reviewed each prong of the analysis, and we cannot say that, based on the information before it, the district court abused its discretion. However, we cannot assume that the district court would have reached the same conclusion if it had the benefit of the additional evidence presented in this appeal.

The district court resolved three *Squirt-Co* factors in favor of Industries, and three in favor of Sportswear. The new information advanced in this appeal may significantly affect the analysis of the *Squirtco* factors, and may well sway the district court's decision as to one or more of those factors. That being the case, we are not in a position to evaluate the balance struck by the district court. Therefore, we must remand this case to the district court for new findings based on a consideration of all of the trademarks employed by Sportswear.

### III. CONCLUSION

For the reasons stated above, we vacate the decision of the district court and remand for reconsideration in light of the existence of three Sportswear marks.

---

**2.** Sportswear contends that because the controversy involves women's apparel the potential for confusion is very small. This argument seems gratuitously sexist, based as it is on an assumption that women necessarily devote a significantly greater amount of time and attention to all aspects of their purchases, including trademarks. We cannot find that a producer of women's clothing should be entitled to less trademark protection than would be a comparable producer of men's clothing.