SPORTS DESIGN AND DEVELOP-
MENT, INC., d/b/a Bill Lewis
Lures, Plaintiff,

v.

Larry SCHONEBOOM, d/b/a Stream-
Lines International Sporting Goods
Products, Defendant.

No. C95–4001.

United States District Court,
N.D. Iowa,
Western Division.

Jan. 6, 1995.

John C. Gray, Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, IA, and John Wesley Daughdrill, Jr., Young Scanlon & Sessums, P.A., Jackson, MS, for plaintiff.

No appearance, for defendant.

## ORDER GRANTING TEMPORARY RESTRAINING ORDER PURSUANT TO F.R.CIV.P. 65(b)

BENNETT, District Judge.

### I. INTRODUCTION AND BACKGROUND

This matter comes before the court pursuant to Plaintiff Sports Design and Development, Inc.'s d/b/a Bill Lewis Lures ("Bill Lewis Lures") Application for Temporary Restraining Order Pursuant to F.R.C.P. 65(b) and Civil Seizure Order (# 2) filed January 3, 1995 and motion to seal case, for expedited discovery, for order setting bond, for order to show cause, and for hearing on preliminary injunction (# 3) filed on January 3, 1995.[1] Bill Lewis Lures seeks a temporary restraining order enjoining Defendant Larry Schoneboom d/b/a Stream–Lines International Sporting Good Products ("Schoneboom") from any further infringement of Bill Lewis Lures' RAT–L–TRAP trademark or trade dress.[2] Bill Lewis Lures further requests that the court order the seizure of any products or materials bearing Bill Lewis Lures' RAT–L–TRAP mark.

On January 3, 1995, Bill Lewis Lures, a manufacturer of fishing lures under the registered mark RAT–L–TRAP, brought this action for trademark infringement of its RAT–L–TRAP mark against Schoneboom. In its three-count complaint Bill Lewis Lures asserts claims against Schoneboom for violation of the Trademark Act of 1946 ("The Lanham Trademark Act"), 15 U.S.C. § 1051 et seq., the Trade Mark Counterfeiting Act of 1984, 15 U.S.C. § 1116 et seq., (Count I), and section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), (Count III). Bill Lewis Lures further claims relief based on pendent common law claims of unfair competition and trademark infringement (Count II).

The federal district courts have always been courts of limited jurisdiction. See U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the stat-

---

1. On January 3, 1995, the court informed counsel for Bill Lewis Lures that it would not grant it an *ex parte* application for a temporary restraining order.

2. A trademark is a distinctive mark of authenticity, through which the products of particular manufacturers or the commodities of particular merchants may be distinguished from those of others. *Two Pesos, Inc. v. Taco Cabana, Inc.*, — U.S. —, —, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992). Trade dress, on the other hand, consists of the product's packaging and image, broadly construed, not the words and symbols that a manufacturer uses on its goods. *Id.* at —, 112 S.Ct. at 2766 (Thomas, J., concurring); *Woodsmith Pub. Co.*, 904 F.2d at 1247; *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir.1987). Thus, a trademark is an individual feature on the product while the trade dress is the entire "look" of the product.

utes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)); *see also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169 (8th Cir.1994) (federal court jurisdiction limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992); *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994). Here jurisdiction is grounded on alleged violations of the Lanham Trademark Act. *See* 28 U.S.C. § 1338.

A hearing on Bill Lewis Lures' request for a temporary restraining order, civil seizure order and expedited discovery was held on January 6, 1994. Bill Lewis Lures appeared through its counsel John C. Gray, Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, Iowa, and John Wesley Daughdrill, Jr., Young, Scanlon, & Sessums, P.A., Jackson, Mississippi. Defendant Schoneboom did not appear at the hearing. At the hearing, Mr. Gray informed the court that the Sac County Sheriff's Office had served Schoneboom with notice of the hearing on January 5, 1995.

## II. FINDINGS OF FACT

Plaintiff Bill Lewis Lures is a corporation incorporated under the laws of the State of Louisiana, and its principal place of business is located in Alexandria, Louisiana. Compl. at ¶ 5. Defendant Schoneboom operates a business in Wall Lake, Iowa and Early, Iowa. *Id.* at ¶ 6. Bill Lewis Lures is the owner of the registered trademark "RAT–L–TRAP", registration number 1,432,081. *Id.* at ¶ 9. For a number of years Bill Lewis Lures has offered fishing lures under the RAT–L–TRAP mark. *Id.* at ¶ 8. These lures are sold in distinctive packaging. *Id.* at ¶ 7. The lures are sold in clear plastic boxes with plastic hooks on one end of the box which permits it to be displayed in a retail setting. On the wall behind the lure is a white insert which has imprinted on it in large red letters "Rat–L–Trap." The symbol for registered trademark appears just to the upper right of the phrase. Immediately below the red letters is the word "Rattletrap" surrounded by parenthesis and again followed by the symbol for registered trademark. Below the two phrases appears the following text:

> For best results, retrieve the lure fast. Rattlers set up vibration and chatter that can best be heard in 20 feet of water. Excellent School bass lure. Also very effective with yo-yo retrieve. Produces most violent strikes of any lure we have ever fished.

Right of the text quoted above appears a sketch of a fisherman drawn in red ink. Immediately below the text the words "Bill Lewis Lures" appear in red.[3] Bill Lewis Lures has engaged in extensive advertising and sale of RAT–L–TRAP lures. *Id.* at ¶ 8.

On September 2, 1994, the Lee Company, a sporting goods distributorship located in Lewisville, Texas, purchased approximately 1400 to 1500 RAT–L–TRAP fishing lures from Schoneboom. Aff. of John Kenneth

---

**3.** At the hearing on the temporary restraining order Bill Lewis Lures introduced into evidence two examples of its RAT–L–TRAP lures enclosed in their plastic boxes (Pl.Ex. 2). Bill Lewis Lures also submitted two examples of Schoneboom's allegedly counterfeit lures (Pl.Ex. 1). The descriptions found above concerning the trade dress of Bill Lewis Lures' RAT–L–TRAP lures is based upon the court's observations of these exhibits.

Wilson ("Wilson Aff.") at ¶ 2.[4] On September 7, 1994, the Lee Company sold one of the fishing lures purchased from Schoneboom, a Chrome Black RAT–L–TRAP fishing lure, to Jimmy Franklin Smith of Smitty's Sporting Goods in Dallas, Texas. Wilson Aff. at ¶ 3; Aff. of Jimmy Franklin Smith ("Smith Aff.") at ¶ 2. Smith, aware of the existence of counterfeit RAT–L–TRAP lures, contacted Preston Hartt of Bill Lewis Lures prior to ordering the lure. Smith Aff. at 3; Aff. of Preston Hartt ("Hartt Aff.") at 3. Hartt works in the sales department of Bill Lewis Lures and has done business with Jimmy Franklin Smith of Smitty's Sporting Goods for many years. Hartt Aff. at ¶ 1. Upon receipt of the lure on September 20, 1994, Smith sent it to Hartt. Smith Aff. at ¶ 4; Hartt Aff. at ¶ 3. On September 21, 1994, Hartt sent the lure to Eldora Plastics in Eldora, Iowa for testing to determine whether the lure was in fact counterfeit. Hartt Aff. at ¶ 4. After testing was done at Eldora Plastics, the lure was eventually sent on October 4, 1994, to Triad Fastener Limited Partnership in Alda, Nebraska. Aff. of Jerry Jenson ("Jensen Aff.") at ¶¶ 5–10; Aff. of John Wesley Daughdrill, Jr. ("Daughdrill Aff.") at ¶ 3; Aff. of Herb Worthington ("Worthington Aff.") at ¶¶ 3–7. Triad and Eldora Plastics are the only two companies that produce plastic lure bodies for Bill Lewis Lures' RAT–L–TRAP fishing lures. Worthington Aff. at ¶ 2; Jensen Aff. at ¶ 2. Testing at Triad and Eldora Plastics revealed that the lure purchased from Schoneboom could not have been produced by any mold ever used at either facility to make RAT–L–TRAP lures. Worthington Aff. at ¶¶ 3–6; Jensen Aff. at ¶¶ 6–10.

The RAT–L–TRAP lure sold by Schoneboom differs from the RAT–L–TRAP lures sold and marketed by Bill Lewis Lures in the following ways: (1) that the Schoneboom lure differs in length from Bill Lewis Lures' RAT–L–TRAP lures; (2) that the eyes on the Schoneboom lure are out of location when compared with a Bill Lewis Lures' RAT–L–TRAP lure; (3) that the eyes on the Schoneboom lure protrude from the body more than those found on Bill Lewis Lures' RAT–L–TRAP lures; (4) that the eyes on the Schoneboom lure are smaller in diameter; and (5) the fin on the Schoneboom lure is taller than that found on a Bill Lewis Lures' RAT–L–TRAP lure, and the Bill Lewis Lures' lure has a flat on the fin after the radius. Aff. of Everett Gill at ¶ 4.

The packaging of Schoneboom's lures is identical to that of Bill Lewis Lures. The only perceivable differences are the red ink on the insert found in Schoneboom's plastic case is slightly faded, and the text is in a slightly bolder type face.

Bill Lewis Lures' counsel hired John P. Dolan, Jr., a private investigator from Des Moines, Iowa, to conduct investigative work concerning trademark infringement and counterfeiting. Aff. of John P. Dolan, Jr. ("Dolan Aff.") at ¶¶ 1–2. Dolan found fishing lure production facilities in a building in Early, Iowa, in which Schoneboom had previously operated his sporting equipment and fish lure business. *Id.* at ¶ 3.

## III. CONCLUSIONS OF LAW

### A. Standards for Granting a Temporary Restraining Order

 Courts in this circuit apply the well-established standards set out in *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (*en banc*), for consideration of a preliminary injunction in also determining the propriety of issuing a temporary restraining order under Federal Rule of Civil Procedure 65.[5] *See S.B. McLaughlin &*

---

4. All of the affidavits referred to in this order are attached to Bill Lewis Lures' brief.

5. Federal Rule of Civil Procedure 65(b) states as follows:

A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Every temporary restraining order granted without notice shall be indorsed with the date and

*Co. v. Tudor Oaks Condominium Project,* 877 F.2d 707, 708 (8th Cir.1989) (approving district court's application of *Dataphase* test in considering temporary restraining order); *Jackson v. National Football League,* 802 F.Supp. 226, 229 (D.Minn.1992); *see generally* Wright & Miller, *Federal Practice and Procedure* § 2951, at 499 (1973) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements"). The court must consider four factors in determining whether to issue a temporary restraining order:

(1) the threat of irreparable harm to the movant;

(2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

*Dataphase Sys., Inc.,* 640 F.2d at 114; *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 485–86 (8th Cir. 1993). The *Dataphase* factors are to be applied in a trademark case. *See Calvin Klein Cosmetics Co. v. Parfums De Coeur, Ltd.,* 824 F.2d 665, 667 (8th Cir.1987). "The plaintiff bears the burden of proof concerning the four factors." *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987). "As is always true when weighing these factors" to determine whether the extraordinary relief of a temporary restraining order should be granted, "no single factor is itself dispositive." *Sanborn Mfg.,* 997 F.2d at 486; *Calvin Klein Cosmetics Corp. v. Lenox Labs.,* 815 F.2d 500, 503 (8th Cir.1987). Rather, a court must consider all of the factors to determine whether the balance weighs toward granting the injunctive relief sought. *Sanborn Mfg.,* 997 F.2d at 486; *Lenox Labs.,* 815 F.2d at 503; *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 988 F.2d 61, 64 (8th Cir.1993).

## B. Analysis

The court now turns to the merits of Bill Lewis Lures' motion for a temporary restraining order. The court will consider each of the *Dataphase* factors seriatim.

## 1. Likelihood of Success on the Merits

In *Dataphase Sys., Inc.,* 640 F.2d at 113, the court found that the "probability of success" does not require the party seeking relief prove a greater than 50% likelihood that he will prevail on the merits. Further, "[t]he court ordinarily is not required at an early stage to draw the fine line between a mathematical probability and a substantial possibility of success." *Id.* "The focus in determining probable success should not be to apply the probability language with mathematical precision." *Lenox Labs., Inc.,* 815 F.2d at 503. Bill Lewis Lures has demonstrated a *prima facie* case of trademark infringement of its RAT–L–TRAP mark and trade dress, and has a substantial likelihood of success on the merits of its claims under the Lanham Trademark Act. Under § 43(a) of the Lanham Trademark Act, 15 U.S.C.

hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if the party does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motions as expeditiously as the ends of justice require.

§ 1125(a),[6] success on the merits of a trade dress infringement claim requires proof of three elements: that the trade dress of the two competing products is confusingly similar, that the appropriated features of the trade dress are primarily non-functional, and that the trade dress has obtained secondary meaning (i.e., that the public has come to associate the trade dress with a product). *See Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244 (8th Cir.1990); *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1216–21 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). The key to finding a violation under § 43(a) is a determination that the allegedly infringing products created a likelihood of confusion, deception or mistake on the part of the consuming public. *See Toro Co. v. R & R Prods. Co.*, 787 F.2d 1208, 1214 (8th Cir. 1986); *Metric & Multistandard Components v. Metric's, Inc.*, 635 F.2d 710, 714 (8th Cir. 1980).

Here, these factors all weigh in Bill Lewis Lures' favor. The products are very similar. Indeed, Schoneboom's lure carries the RAT–L–TRAP mark and bears such close resemblance to Bill Lewis Lures' RAT–L–TRAP lures that virtually the only way to distinguish between the lures is through comparing the measurements of the two lures. Thus, the court finds that Schoneboom's lure creates the likelihood of confusion, deception, or mistake on the part of the consuming public. Furthermore, the RAT–L–TRAP trade dress is nonfunctional.[7] Finally, the RAT–L–TRAP mark and trade dress has come to be so associated with Bill Lewis

Lures as to constitute a secondary meaning. Thus, the court finds that Bill Lewis Lures has shown a substantial likelihood of success on the merits of its claim under the section 43(a) of the Lanham Trademark Act. As such, the court need not now consider its likelihood of success on the remaining claims alleged in the complaint.

### 2. The Threat of Irreparable Harm

■ "When deciding the propriety of issuing a preliminary injunction the court considers the type of harm plaintiffs allege will occur." *Bloom v. O'Brien*, 841 F.Supp. 277, 279 (D.Minn.1993). "The threshold inquiry is whether the moving party has shown a threat of irreparable injury." *ILQ Investments, Inc. v. City of Rochester*, 816 F.Supp. 516, 521 (D.Minn.1993), *rev'd on other grounds*, 25 F.3d 1413 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994). Further, "[t]o satisfy the threat of irreparable harm, the plaintiffs must prove that harm will result without injunctive relief and the harm will not be compensable without money damages. Possible or speculative harm is not enough." *Bloom*, 841 F.Supp. at 279.

■ The Eighth Circuit has held that in a trademark infringement action, a plaintiff may establish the requisite showing of irreparable harm by demonstrating the likelihood of public confusion. *Lenox Labs., Inc.*, 815 F.2d at 505 (holding that district court erred in granting preliminary injunction based on public's interest in not being confused by product, imitation scented perfume, where court failed to consider countervailing public

---

**6.** Section 43(a) of the Lanham Act provides in pertinent part:

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

 (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

 (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qual-

ities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a) (West Supp.1994).

**7.** "The test for determining whether a trade dress feature is functional is whether protection of the feature would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Woodsmith Pub. Co.*, 904 F.2d at 1247 n. 6 (citing *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272 (10th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988)).

interest in obtaining the product at the lowest possible price); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746 (8th Cir.1980) (granting injunctive relief in action brought under section 43(a) of the Lanham Trademark Act by producer of jewelry under the title "Black Hills Gold Jewelry" against another manufacturer of jewelry marketed as "Black Hills Gold Jewelry" on the grounds that defendant's product was likely to confuse consumers of plaintiff's goods).[8] The Eighth Circuit has further stated that "a district court 'could presume irreparable injury from a finding of probable success' on the merits in such a case." *Sanborn Mfg.*, 997 F.2d at 489 (quoting *Lenox Labs., Inc.*, 815 F.2d at 505); *see Black Hills Jewelry Mfg. Co.*, 633 F.2d at 753. Having already concluded above that Bill Lewis Lures is likely to succeed on the merits of its claim under section 43(a) of the Lanham Trademark Act, the court may presume that it will suffer irreparable injury if the injunctive relief sought is denied.

### 3. The Balance of Hardships

■ "The third *Dataphase* factor requires the court to consider the balance between the harm to the movant and the injury that granting the injunction will inflict on other interested parties." *Sanborn Mfg.*, 997 F.2d at 489. This factor also weighs in favor of Bill Lewis Lures. The possible harm to Bill Lewis Lures is the diminution in its goodwill in its RAT–L–TRAP mark and trade dress. The harm to Schoneboom if the

injunctive relief sought is granted will be to limit his manufacture, sale, or distribution of lures with the RAT–L–TRAP mark or trade dress. A restraining order would not prevent him from producing or selling other types of fishing lures, or otherwise conducting business. Therefore, the court concludes that the balance of possible harms in this case weighs in favor of Bill Lewis Lures.

### 4. Public Interest

■ The public has an interest in protecting the integrity of trademarks and trade dress. *See Hyatt Corp. v. Hyatt Legal Servs.*, 736 F.2d 1153, 1159 (7th Cir.1984), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 361 (1984). In the context of trademark infringement, this factor involves balancing the interest of protecting the public from confusion or deception with the interest of facilitating a competitive market. *Woodroast Sys., Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906, 919 (D.Minn.1992), *aff'd*, 994 F.2d 844 (8th Cir.1993) (table). Here, that interest is furthered by preventing public confusion which might result if the infringement of Bill Lewis Lures' RAT–L–TRAP mark and trade dress was permitted to occur through the sale and distribution of counterfeit RAT–L–TRAP lures.

### 5. Conclusion

■ Upon consideration of the four *Dataphase* factors, the court concludes that all four factors weigh in favor of granting Bill Lewis Lures' request for a temporary re-

---

**8.** As the Eighth Circuit has pointed out:
"(A) showing of a likelihood of confusion of consumers will usually result in proving the requisite likelihood of damage to the plaintiff-competitor. Thus, the prime test of liability under § 43(a) is closely analogous to, if not identical with, the likelihood-of-confusion test of federal and common-law trademark infringement and unfair competition.

Since § 43(a) was passed as a consumer protection statute, the courts are not reluctant to allow a commercial plaintiff to obtain an injunction even where the likelihood of pecuniary injury to the plaintiff may be slight. Thus, under § 43(a), Congressional policy appears to encourage commercial companies to act as the fabled "vicarious avenger" of consumer rights. An injunction, as opposed to money damages, is no windfall to the commercial plaintiff. An injunction protects both consumers and the

commercial plaintiff from continuing acts of false advertising. The fact that § 43(a) was passed to protect consumers as well as competitors is illustrated by the rule that a likelihood of consumer confusion is sufficient for injunctive relief. An injunction protects the consumer from continued false advertising. Money damages, on the other hand, primarily aid only the competitor, and he is required to satisfy a higher standard of proof as to injury." *Black Hills Jewelry Mfg. v. Gold Rush, Inc.*, 633 F.2d 746, 753 n. 7 (8th Cir.1980) (quoting J. McCarthy, *Trademarks & Unfair Competition*, § 27:5A at 250–51 (1973) (footnotes omitted)). Here, unlike the situation in *Black Hills Jewelry Mfg.*, where the court was not confronted with a registered trademark, it appears to be without question that Bill Lewis Lures owns the trademark RAT–L–TRAP.

straining order. Therefore, based on Bill Lewis Lures' showing of the likelihood of its success on the merits, its threat of irreparable harm, the fact that the balancing of possible hardships favors Bill Lewis lures, and public interest supports the granting of the relief sought, the court will grant Bill Lewis Lures' application for a temporary restraining order. The court, however, must still take up Bill Lewis Lures' request for a civil seizure of materials bearing the RAT-L-TRAP mark.

### C. Seizure of Schoneboom's Materials and Expedited Discovery

■ The Lanham Trademark Act authorizes a district court to grant an *ex parte* order for the seizure of items involved in the unlawful use of a counterfeit mark, including counterfeit marks, the means of making such marks, and records. 15 U.S.C. § 1116(d)(1)(A). In order to obtain an *ex parte* seizure order under 15 U.S.C. § 1116(d)(1)(A), a party must be in violation of Section 1114(1)(a) specifically by "using a counterfeit mark in connection with the sale, offering for sale or distribution of the goods and services." [9]

Section 1116(d)) provides for a right of *ex parte* seizure if the court finds:

(i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;

(ii) the applicant has not publicized the requested seizure;

(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

(iv) an immediate irreparable injury will occur if such seizure is not ordered;

(v) the matter to be seized will be located at the place identified in the application;

(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii) the person against whom seizure will be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C. § 1116(d)(4)(B).

Here, however, this procedure is inapplicable because the court has required Bill Lewis Lures to give Schoneboom notice of the hearing on its motions.[10]

Furthermore, even if this section was applicable, the court is not persuaded that the materials which Bill Lewis Lures wants seized will be located at Schoneboom's home. Bill Lewis Lures' application merely speculates that such materials are located at those premises. Similarly, Bill Lewis Lures has not demonstrated that counterfeit lures exist at Schoneboom's prior place of business. The application is based on the observations of its private investigator, John P. Dolan, Jr. Dolan, however, only avers:

3. As part of my investigation, I went to 102 S. Main in Early, Iowa, where I was able to gain access to a building in which Larry Schoneboom ("*Schoneboom*") previously had a sporting equipment/fishing lure business. In this particular building, I found a fishing lure production facility capable of producing plastic fishing lures. There were hundreds of lures in various stages of production. There was also equipment with which to paint fishing lures after the lure bodies have been completed.

---

9. In 15 U.S.C. § 1116, counterfeit is defined as: (B) as used this subsection the term "counterfeit mark" means—
(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered.

(ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of Section 380 of Title 36.

10. Bill Lewis Lures has not offered any other basis which would permit the court to order a seizure of Schoneboom's materials.

4. The city clerk in Early, Iowa informed me that Schoneboom had closed his business and had taken most of his equipment with him.

5. I also visited Schoneboom's home at 507 Sherwood Street, Wall Lake, Iowa 51466.

6. After examining the size of the production area in Early, Iowa, I concluded that Schoneboom could have taken enough equipment from his former business to be producing lures in an addition on the side of his garage at 507 Sherwood Street, in Wall Lake, Iowa 51466.

Dolan Aff. at ¶¶ 3–6. It is important to note that Dolan does not allege that he has seen any alleged counterfeit lures or production facilities for producing such lures at either location. Furthermore, given that Dolan does not allege to have been in the addition to Schoneboom's home, it is rank speculation on Dolan's part as to whether Schoneboom could have transferred production facilities to that location. Therefore, Bill Lewis Lures' request for the civil seizure of items from Schoneboom's home and prior business will be denied.

■■■ Although the court has denied Bill Lewis Lures' request for a civil seizure pursuant to 15 U.S.C. § 1116, Bill Lewis Lures' request for expedited discovery shall be granted. The court is convinced that Bill Lewis Lures will need expedited discovery in this case in order to prepare for the preliminary injunction hearing. Therefore, Bill Lewis Lures may take Schoneboom's deposition with 48 hours notice. Similarly, Bill Lewis Lures is authorized to request production of documents or other materials within 48 hours of service of a subpoena *duces tecum* for such documents or materials.

### D. Conclusion

The court, therefore, concludes that Bill Lewis Lures has demonstrated its need for a temporary restraining order. Accordingly, it is ordered that Defendant Larry Schoneboom, d/b/a Stream–Lines International Sporting Goods Products, his officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of the foregoing, including distribu-

tors and retailers, who receive actual notice of this Order by personal service or otherwise be, and they hereby are, temporarily restrained:

(a) from using the mark RAT–L–TRAP or any reproduction, counterfeit, copy, or colorable imitation of said mark in connection with the advertising, offering for sale, or sale of non–RAT–L–TRAP lures or other products;

(b) from using the mark RAT–L–TRAP or any reproduction, counterfeit, copy, or colorable imitation of said mark in any manner likely to cause confusion, to cause mistake or to deceive;

(c) from passing off, inducing or enabling others to sell or pass off any lures which are not RAT–L–TRAP products;

(d) from committing any acts calculated to cause purchasers to believe that Defendants' products are RAT–L–TRAP products in whole or in part unless they are such;

(e) from possessing, advertising, receiving, shipping, delivering, distributing, holding for sale, returning, offering to sell or otherwise disposing of in any manner lures or other products falsely bearing the mark RAT–L–TRAP or the overall appearance of the lures offered under the mark RAT–L–TRAP, or any reproduction, counterfeit, copy or colorable imitation of said mark of lures; and

(f) from destroying, altering, disposing of, concealing, tampering with or in any manner secreting any and all business records, invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, purchase, sale or offer for sale or distribution of any merchandise having the mark RAT–L–TRAP.

The court shall deny Bill Lewis Lures' request for a civil seizure of materials in the possession of Schoneboom because its request fails to meet the requirements of 15 U.S.C. § 1116(d)(3)–(4). The court shall also deny Bill Lewis Lures' request to seal the file in this case.

The court, however, shall grant Bill Lewis Lures' request for expedited discovery. The parties are authorized to engage in discovery immediately. This would include, *inter alia,* depositions pursuant to Federal Rule of Civil Procedure 30 that may be taken of Defendant Larry Schoneboom and his agents or others acting in concert with him on a minimum of forty-eight (48) hours notice. Also, a notice to Defendant Schoneboom and his agents or others acting in concert with him for a request made in compliance with Federal Rule of Civil Procedure 34 for production of documents and tangible things at the taking of the deposition pursuant to Federal Rule of Civil Procedure 30(b)(5) may be provided on the same forty-eight (48) hour minimum notice requirement. This would also be true for any subpoena *duces tecum* to Defendant Schoneboom and his agents or others acting in concert with him.

Pursuant to Federal Rule of Civil procedure 65(c), Bill Lewis Lures is not required, at this time, to post security for this temporary restraining order. However, should the Defendants appear in this case and present arguments and evidence as to why security should be posted, the court would be willing to reconsider this issue. A hearing for a preliminary injunction is hereby set for **January 26, 1995** at **12:00 p.m.** The parties may submit cross-briefs, affidavits and/or other relevant filings on or before **January 19, 1995.** Reply filings may be filed on or before **January 24, 1995.** This temporary restraining order shall remain in force for twenty (20) days.

**IT IS SO ORDERED.**