**ROHO, INCORPORATED,**
Plaintiff–Appellee,

v.

Charles **MARQUIS,** Individually and d/b/a Chase Air Flotation, and Chase Orthopedic Care, Inc., Defendants–Appellants.

No. 89–3558.

United States Court of Appeals, Fifth Circuit.

June 1, 1990.

Martin Fleit, Fleit, Jacobson, Cohn, Price, Holman & Stern, Washington, D.C., for defendants-appellants.

William L. Sauerwein, St. Louis, Mo., Edward D. Markle, Adams & Reese, New Orleans, La., Suelthaus & Kaplan, St. Louis, Mo., for plaintiff-appellee.

Before REAVLEY, JONES and DUHÉ, Circuit Judges.

REAVLEY, Circuit Judge:

Defendants Charles Marquis, Chase Air Flotation, and Chase Orthopedic Care, Inc. (collectively "Marquis") appeal a preliminary injunction order, enjoining them from, among other things, using wheelchair cushions manufactured by plaintiff Roho, Incorporated ("Roho") to create a therapeutic mattress. Finding that Roho did not demonstrate a likelihood of prevailing on the merits, we vacate the injunction.

I.

The somewhat simple facts surrounding this dispute raise a disproportionately elusive problem of trademark law. Roho manufactures wheelchair cushions with a specialized technology that utilizes a series of airpockets to provide enhanced support. It also manufactures another product, the Roho mattress, which is made by assembling four of the cushions together. The mattress is leased to hospitals, which in turn use them for bedridden patients both to prevent and to treat decubitus ulcers.[1] In conjunction with its mattress leasing program, Roho provides additional services for the hospital, which include delivering and picking up the mattresses, inflating and adjusting them to suit the patient, and disinfecting them after use. Roho claims that its president, Robert Graebe, holds a patent on the technology and the cushions, but not on the mattresses. Both the cushions and the mattresses are labeled with the Roho trademark, patent information, and instructions for maintaining the product.

Charles Marquis is the president, sole shareholder, and sole officer of Chase Orthopedic Care, Incorporated, a Louisiana corporation that sells and leases medical care equipment. In December 1988, Marquis bought eighty-seven Roho wheelchair cushions. He removed the Roho labels from ten of those cushions and fastened the cushions together with glue and grommets to make a mattress. He then placed a tag on the mattress, indicating the name and address of his company, and began marketing it to Tulane Hospital. Except for the labeling, grommets, and additional valves, which are only visible upon close inspection, the Marquis mattress is virtually indistinguishable from Roho's mattress. However, the Marquis mattress does include a unique feature—it permits increased manual adjustment along the longitudinal axis.

---

1. Decubitus ulcers result "from pressure to an area of the body from a bed or chair." *Taber's Cyclopedic Medical Dictionary* 375 (C. Thomas ed. 1981).

After making an unsuccessful demand upon Marquis to stop marketing his mattress, Roho sought injunctive relief, claiming: (1) that Marquis had engaged in "reverse palming off" or selling Roho's mattress as his own, which is a use of false designation of origin and false representation in interstate commerce in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) that Marquis had utilized Roho trademark and service marks in violation of 15 U.S.C. § 1114 and Louisiana trademark law; and (3) that Marquis engaged in unfair competition, dilution of business reputation, unfair trade practices, and fraud as prohibited by Louisiana law.

The district court initially granted Roho's ex parte motion for a temporary restraining order and required Roho to post a $1,500 bond. After a subsequent hearing, the court issued a preliminary injunction on the ground that Marquis had likely violated the Lanham Act's prohibition against falsely designating the origin of a product. Marquis appeals the preliminary injunction, which orders him to refrain from

(a) Combining plaintiff's wheelchair cushions in the form or shape of a mattress and offering said mattress for sale, lease or use, for compensation or otherwise;

(b) Removing or obliterating any portion of the yellow or gold etching, printing or other markings from the back of the wheelchair cushions including the trademarks;

(c) Representing in any way, directly or indirectly, that the plaintiff's wheelchair cushions or the plaintiff's mattresses are manufactured by defendants;

(d) Selling or offering for sale the plaintiff's products under a different name or representation or attaching any type of label thereto indicating the defendants' name and address; and

(e) Utilizing the plaintiff's wheelchair cushions in a manner not specifically authorized in writing by plaintiff.

## II.

### A. Standard of Review

■■■ A preliminary injunction is an extraordinary remedy that should not be granted unless the movant has demonstrated, by a clear showing: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the nonmovant; and (4) that the injunction will not undermine public interests. *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 809 (5th Cir.1989); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985). On appeal, a preliminary injunction order must be left undisturbed unless grounded upon a clearly erroneous factual determination, an error of law, or an abuse of discretion. *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 503 (8th Cir.1987); *see White v. Carlucci,* 862 F.2d 1209, 1211 (5th Cir.1989).

### B. The Lanham Act

To determine the likelihood of success on the merits, we look to the standards provided by the substantive law. *See Mississippi Power,* 760 F.2d at 622. The Lanham Act proscribes the inappropriate use of trademarks and goods and services. Section 43(a) specifically prohibits the use of false descriptions and false designations of origin when advertising or selling goods or services in commerce. 15 U.S.C. § 1125(a).[2] Although the parties do not dispute that Marquis' actions involve goods or services in commerce, they are divided on the question of whether he has falsely designated his product's origin.

---

**2.** Any person who shall affix ... or use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
15 U.S.C. § 1125(a).

■ The Lanham Act's prohibitions against a false description or false designation of origin primarily extend to two types of activities: (1) the false advertising of goods or services; and (2) "palming off," which involves selling one's goods under the name of a competitor. *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir.1988). However, it also reaches merchandising practices or conduct that are "'economically equivalent' to palming off." *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir.1981). Such practices include a false designation of origin through "reverse palming off," which may be accomplished by "remov[ing] or obliterat[ing] the original trademark, without authorization, before reselling goods produced by someone else." *Id.*

■ Reverse palming off occurs with the direct misappropriation of the services or goods of another. *See id.* at 606–07 (director removed an actor's name from the credits and advertising and replaced it with another actor's name); *see also Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1213, 1221 (8th Cir.) (in sales literature, a farm equipment manufacturer used photographs of a competitor's grain trailer that had been labeled as its own product), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). A defendant may also be guilty of reverse palming off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name. *See Arrow United Indus., Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 412, 415 (2d Cir. 1982) (preliminary injunction issued prohibiting defendant from modifying Arrow–Foil dampers in size and other minor respects and relabeling them); *Matsushita Elec. Corp. of Am. v. Solar Sound Sys., Inc.*, 381 F.Supp. 64, 66–67, 70 (S.D.N.Y.1974) (defendant enjoined from using one of plaintiff's radios, which had been slightly modified and then relabeled, to advertise the sale of defendant's radio).

Traditional and reverse palming off activities have both been recognized as wrongful because they involve attempts to misappropriate another's talents. *La-*

*mothe*, 847 F.2d at 1406–07 (quoting *Smith*, 648 F.2d at 607); *Rosenfeld v. W.B. Saunders*, 728 F.Supp. 236, 241 (S.D.N.Y. 1990). Reverse palming off imposes additional harm by depriving "the originator of the misidentified product ... of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Smith*, 648 F.2d at 607. The ultimate purchaser is harmed as well by the loss of knowledge of and possible deception regarding the true source of the product or service. *Id.*

### C. *Roho's Claim*

Roho contends that Marquis engaged in reverse palming off by (1) "procur[ing] the basics of the Roho mattress"—the wheelchair cushions; (2) making "inconsequential modifications gluing them together to increase its size;" and (3) ultimately marketing "a product identical to the Roho mattress made only from Roho basic technology." In essence, the company claims that because these actions produced a slightly modified version of the Roho mattress, which Marquis sold under his own label, he has violated section 43(a) of the Lanham Act. Roho's argument, however, raises certain analytic difficulties because this is not a traditional reverse palming off scenario. Marquis did not purchase a Roho mattress, remove the labels, and resell it with his own label. Rather, he purchased one Roho product—the wheelchair cushions—and used them to copy another Roho product—the mattresses. It is further complicated by the fact that one of Roho's products is patented, while the other is not. To clarify the analysis, it is useful at this point to note the precise actions about which Roho may or may not complain.

As the holder of a patent, Roho has, by statute, been granted a monopoly over the technology and the cushions. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229–30, 84 S.Ct. 784, 787–88, 11 L.Ed.2d 661 (1964). That patent, however, is strictly construed and "cannot be used to secure any monopoly beyond that contained in the patent." *Id.* at 230, 84 S.Ct. at 788. Additionally, as long as the terms of the patent

are not violated, the purchaser of a patented article has the right to use and sell it. *United States v. Univis Lens Co.*, 316 U.S. 241, 249, 62 S.Ct. 1088, 1093, 86 L.Ed. 1408 (1942); *see Sears, Roebuck & Co.*, 376 U.S. at 230, 84 S.Ct. at 788. Roho has alleged no patent violation and thus has raised no issue regarding Marquis' right to use and resell the wheelchair cushions.

■ Marquis' right to copy Roho's unpatented product, the Roho mattress, also cannot be disputed. The common law has long recognized that an unpatented article "is in the public domain and may be made and sold by whoever chooses." *Id.* at 231, 84 S.Ct. at 789; *see Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 237–38, 84 S.Ct. 779, 782, 11 L.Ed.2d 669 (1964). Accordingly, those with the ingenuity to copy a popular but unpatented product are entitled to do so, as long as they do not run afoul of the unfair trade practice laws. *Hypertherm, Inc. v. Precision Prods., Inc.*, 832 F.2d 697, 700 (1st Cir.1987); *Calvin Klein*, 815 F.2d at 503; *Saxony Prods., Inc. v. Guerlain, Inc.*, 513 F.2d 716, 722 (9th Cir.1975); *Smith v. Chanel, Inc.*, 402 F.2d 562, 567 (9th Cir.1968); *see Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368–69, 44 S.Ct. 350, 351–52, 68 L.Ed. 731 (1924); *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1263 (5th Cir. 1971). Although copyists undoubtedly incur the enmity of the product's creator, they serve the public interest by promoting competition and price reductions. *See Chanel*, 402 F.2d at 567–68.

### D. *The Marquis Mattress*

■ While in the abstract Marquis is permitted to copy the Roho mattress, the question here is whether by using Roho's wheelchair cushions to do so, he engaged in an unfair trade practice—namely reverse palming off. As noted above, reverse palming off involves reselling another's product after removing or obliterating the

original label and encompasses products that have been only slightly modified. There is no doubt that Marquis removed the labels from Roho's products, which were modified in some manner, and then sold the resulting product under Marquis' label. The issue is whether Marquis' efforts merely produced a slightly modified Roho mattress that was then relabeled or whether, as Marquis contends, he created a new product to which he could properly apply his own label.[3] *See Arrow*, 678 F.2d at 415 n. 6; *Matsushita*, 381 F.Supp. at 70.

In oral statements at the hearing, the district court determined that Marquis had not created a new product. It additionally concluded in its Supplemental Order and Reasons that there was a strong likelihood of consumer confusion that would lead to irreparable injury to Roho's goodwill and reputation. The court found nothing in Marquis' arguments to militate against issuing a preliminary injunction and accordingly shaped the relief outlined above in section I.

In its analysis, the district court seemed to focus on the similarity between the two mattresses to resolve the "new product" issue and dismissed Marquis' modification of the cushions as trivial. We believe the comparison of the mattresses was misdirected. Because Roho is essentially claiming that Marquis purchased one of its products and then sold that product in a slightly modified form under a different label, the central comparison should be between the product Marquis purchased—the wheelchair cushions—and the product he ultimately marketed—the mattress. In our view, there is no question that, by making the mattress, Marquis created a new product in relation to the wheelchair cushions. He modified those cushions in a more than superficial manner by attaching them with the necessary glue and grommets to create a mattress. Additionally, the two products are commercially distinguishable, in that

---

**3.** Section 43(a) of the Lanham Act additionally prohibits the copying of products "if the features allegedly copied have acquired secondary meaning in the marketplace and are nonfunctional." *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 303 (2d Cir.1981), *cert.*

*denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); *see Truck Equip,* 536 F.2d at 1215. However, because Roho has not claimed a section 43(a) violation on these grounds, we express no opinion on the merits of such a claim.

they are generally marketed to different consumers for different purposes.

Nor can a comparison of the two mattresses support finding Marquis guilty of reverse palming off. Although the Marquis mattress is made of Roho components, it was actually created through Marquis' efforts. It is not a Roho product and, regardless of some similarity between the two mattresses, cannot be considered a relabeled Roho mattress. Marquis' conduct therefore cannot be characterized as reverse palming off.

In reaching this conclusion, we are mindful of the fact that Marquis' actions smack of some unfairness—he is using a patented product to parallel an unpatented product, the benefit of which is primarily derived from the patented product. However, while Marquis "procured" that patented invention from Roho, he paid the price they asked and Roho profited from the sale. If Marquis can buy component parts from Roho and assemble them into a product at a price that is competitive with another of Roho's products, that competition serves the public interest.

Roho seeks to undermine this competition argument by claiming that the alleged inferiority of Marquis' mattress disserves the public interest. However, the marketplace will determine the validity of that claim and the value of the manufacturers' respective products.

For the reasons stated above, we do not believe Marquis' actions constituted reverse palming off and therefore hold that the district court erred in finding that Roho was substantially likely to prevail on the merits of its section 43(a) claim. As that finding is in error and the court's other conclusions regarding likelihood of confusion and irreparable harm cannot alone support the preliminary injunction, the injunction as written must be vacated. *See Calvin Klein,* 815 F.2d at 505. Because the district court rested the injunction upon the section 43(a) claim, it did not reach Roho's other claims. We express no opinion on the remaining claims.

If the district court later uncovers a different breed of trademark infringement and again finds a likelihood of consumer confusion, Marquis may be required to take affirmative steps to avoid confusion, *see B.H. Bunn Co.,* 451 F.2d at 1269–70, including effective labeling or disclaimers, *see Soltex Polymer Corp. v. Fortex Indus., Inc.,* 832 F.2d 1325, 1329 (2d Cir.1987); *Rosenfeld,* 728 F.Supp. at 242–44. However, any "relief granted should be no broader than necessary to cure the effects of the harm caused." *Soltex,* 832 F.2d at 1329.

The injunction is VACATED.