Sonia M. LANDRAU, et al., Plaintiff(s)

v.

Jose E. SOLIS BETANCOURT,
et al., Defendant(s).

Sonia M. Landrau, et al., Plaintiff(s)

v.

Jose E. Solis Betancourt,
et al., Defendant(s).

Civil Nos. 05–2185 (FAB),
06–1773(FAB).

United States District Court,
D. Puerto Rico.

May 21, 2007.

Luis G. Salas–Gonzalez, Raymond A. Cabrera, Silvia G. Rico–Medina, Cabrera & Rico, San Juan, PR, for Plaintiff(s).

Jose Enrique Nassar–Veglio, Enrique Nassar Rizek & Associates, Francisco Ortiz–Santini, Juan R. Marchand Quintero Law Office, John M. Garcia–Nokonechna, Luis F. Del–Valle–Emmanuelli, Garcia & Fernandez, San Juan, PR, PHV Kim Hoyt–Sperduto, The Sperduto Law Firm, PLC, Washington, DC, Etienne Totti–Del–Valle, Daniel Molina–Lopez, Totti & Rodri-

guez Diaz, Hato Rey, PR, for Defendant(s).

## OPINION AND ORDER

BESOSA, District Judge.

On May 9, 2006, Sonia M. Landrau ("Landrau"), her husband Eduardo Garcia–Garcia, the conjugal partnership constituted between them, and the architecture firm of Garcia & Landrau Arquitectos (collectively "plaintiffs"), filed an amended complaint against Jose Solis–Betancourt ("Solis–Betancourt"), Advance Magazine Publishers, Inc. d/b/a Architectural Digest ("Advance"), Conde Nast Publications, Inc. ("Conde Nast"), Penelope Rowlands ("Rowlands"), Dan Forer ("Forer"), Amy R. Chargin ("Chargin"), Sergio Ramirez–de–Arellano ("Ramirez–de–Arellano"), Teresa Del Valle ("Del Valle"), El Dia, Inc. ("EDI"), and Paige Rense ("Rense") (collectively "defendants"), alleging claims under the Lanham Act, 15 U.S.C. § 1125(a), the Architectural Works Copyright Protection Act("AWCPA"), 17 U.S.C. § 120, the Copyright Act, 17 U.S.C. §§ 101—*et seq.,* the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A, as well as the Puerto Rico Intellectual Property Law, 31 P.R. Laws Ann. §§ 1401–1401i, and Unfair Competition Law, 10 P.R. Laws Ann. § 251 (Docket No. 4).[1] On November 13, 2006, Solis–Betancourt moved to dismiss plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 41)[2], which plaintiffs opposed on January 23, 2007 (Docket No. 42). On January 1, 2007, Advance, Conde Nast, Rowlands, Forer, Rense, and Churgin (collectively "Advance") moved for summary judgment on plaintiffs' claims against them (Docket No. 39), which the plaintiffs opposed on February 25, 2007 (Docket No. 56). On March 21, 2007, EDI moved to dismiss plaintiffs' claims against it pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 67), which plaintiffs opposed on May 2, 2007 (Docket No. 85). For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Solis–Betancourt's motion to dismiss, **GRANTS** Advance's motion for summary judgment and **GRANTS** EDI's motion to dismiss.

## FACTUAL BACKGROUND

Architectural Digest ("AD") is the leading monthly magazine in the United States regarding contemporary architecture and interior design. Each issue of AD features several profiles on select design projects, abundantly illustrated, which describe the salient features of the design, the genesis of the project, and the tastes of the homeowner. Each article credits its author, the photographer whose images illustrate it, and the architect and/or interior designer of the featured property. AD is owned by Advance and is published through its Conde Nast division. Rense has been AD's Editor in Chief since 1970.

On May 29, 2002, Paul Sherrill ("Sherrill"), an architect and partner in the Washington, DC-based architecture and design firm of Solis–Betancourt wrote to James Munn, then Administrative Coordinator of AD, describing the work the firm had performed in Puerto Rico in the home of Ramirez–de–Arellano and Del Valle. Sherrill stated in the letter that the firm had developed the architecture and interiors of the house and enclosed several pho-

---

1. On July 31, 2006, the Court dismissed plaintiffs' claims against Solis–Betancourt for failure to serve summons within the prescribed time period (Docket No. 20). On August 8, 2006, plaintiffs refiled their claims against Solis–Betancourt under Civil Case No. 06-

1773. On November 22, 206, the Court consolidated both cases (Docket No. 29).

2. The motion to dismiss had been originally filed in Civil Case No. 06–1773.

tographs. Munn requested additional photographs of the house, which Solis–Betancourt took and sent to him on August 13, 2002. On October 3, 2002, James Huntington, AD's Photographer Director, informed Solis–Betancourt that a full photography shoot of the house had been authorized and sent him AD's standard Design Credit Information form to complete and an Authorization for Publication letter to be forwarded to the homeowners. On October 16, 2002, Solis–Betancourt returned the completed documents. The forms indicated that Solis–Betancourt was both the designer and architect of the house, and that Sherrill should also be credited for the project. The Authorization for Publication letter granted AD access to the house and permission to publish photographs and a description of the house. The homeowners specifically indicated that they were authorized to allow the magazine to publish photographs of the house.

That same month, AD commissioned Forer, a freelance photographer, to take photographs of the house. Forer traveled to Puerto Rico and photographed the interiors and exteriors of the house. He also took pictures of Solis–Betancourt and Sherrill at the house. AD forwarded these photographs to Solis–Betancourt, along with fact and credit sheets for each one where he was asked to indicate the authorship and source of the artwork and furniture displayed in the photographs.

AD assigned Rowlands, a freelance writer and frequent contributor, to write the article on the house. Rowlands visited the house and interviewed both the homeowners and Solis–Betancourt before submitting her article.

The article appeared in the December 2003 issue of AD, titled "Taking the Cure". The article was not referenced in the magazine's cover and is the last article featured in the issue. The article covered six pages and included nine photographs. All but two of the photographs are interior shots and emphasize the interior design of the house. The article did not include the architectural plans nor did it discuss the architectural design of the house in great detail. Based on his representations, the article credits Solis–Betancourt as the architect and interior designer of the house.

On December 16, 2003, Landrau wrote a letter to AD claiming that the firm of Garcia & Landrau was the actual architect of the house, and not Solis–Betancourt as stated in the article. AD forwarded Landrau's letter to Solis–Betancourt. On January 23, 2004, Solis–Betancourt responded, stating that the Garcia & Landrau firm had been contracted for the sole purpose of expediting working drawings of the house for the purpose of obtaining building permits, but only after he and the client had firmly developed a program, design, and aesthetic direction for the project. Solis–Betancourt further stated that Garcia & Landrau were hired for their technical skills and were not consulted on the aesthetics and design of the project. Based on these statements, on February 2, 2004, AD informed Landrau that it would not print a retraction because it had been assured that it had correctly credited the design of the house.

On November 12, 2004, plaintiffs again wrote AD, reiterating their objection to the article and threatening to file suit.

On January 3, 2004, EDI published an article about Luis Llenza, a landscape architect who worked on the Ramirez–de–Arellano–Del Valle home (the "project"). The article referenced his landscaping work in the house and that it had been showcased in AD. The article repeated AD's credit of Solis–Betancourt as the architect of the house.

## DISCUSSION

### A. Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### B. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to "defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment

must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

#### C. *Solis–Betancourt's Motion to Dismiss*

##### 1. *Lanham Act Claims*

 Solis–Betancourt raises two arguments in his motion for the dismissal of plaintiffs' Lanham Act claims. He first argues that the plaintiffs' lack standing to raise any Lanham Act claims because they cannot establish that they have a reasonable interest to be protected. Solis–Betancourt argues that plaintiffs' goods or services must be in direct competition with the defendants' goods or services before they can establish a competitive injury from the defendants' conduct. He claims that because the fields of architecture and interior design are sufficiently distinct that no consumer would confuse the two, he is not in competition with the plaintiffs. His argument, however, ignores or misinterprets well-established precedent.

 Contrary to Solis–Betancourt's assertion, the plaintiffs need not establish that they are in direct competition with him. "[W]hile a plaintiff must show more than a 'subjective belief' that it will be damaged, it need not demonstrate that it is in direct competition with the defendant or that it has definitely lost sales because of the defendant's advertisements." *Ortho*

*Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2nd Cir.1994). "[T]there appears to be a general consensus that the plaintiff does not have to be a competitor in order to have standing to sue." *Camel Hair and Cashmere Institute of America v. Associated Dry,* 799 F.2d 6, 11 (1st Cir.1986). Moreover, even if there was such a requirement, the allegation in the complaint that Solis–Betancourt holds himself out to be an architect would be sufficient to establish that he competes in the field of architecture with the plaintiffs.

 The Lanham Act states that "any person who believes that he is or is likely to be damaged" may file a civil action. 15 U.S.C. § 1125(a). "[T]he dispositive question in determining whether a plaintiff is a proper person to bring a claim under the Lanham Act, is whether the plaintiff has a reasonable interest in being protected against false advertising." *Camel Hair and Cashmere Institute of America,* 799 F.2d at 11. A plaintiff must also show a link between itself and the alleged conduct and not merely that the defendant engaged in prohibited conduct. *See Id.* at 11–12.

In this case, the plaintiffs have sufficiently alleged that they have a reasonable interest to protect; they have also established a link between themselves and Solis–Betancourt's conduct. Plaintiffs certainly have an interest in their reputation and in their work. They allege that they created the architectural design of the project and that Solis–Betancourt is taking credit for their work and the services they performed, disregarding any contribution the plaintiffs made to the project. Without a doubt, this gives them standing to sue under the Lanham Act. *See, e.g., Smith v. Montoro,* 648 F.2d 602, 608 (9th Cir.1981)("[I]t is clear that appellant, as one in the business of providing his talents for use in the creation of an entertainment

product, is uniquely situated to complain of injury resulting from a film distributor's misidentification of appellant's contribution to the product.").

■ Second, Solis–Betancourt argues that plaintiffs' Lanham Act claims should be dismissed because they have failed to allege the essential elements of such a claim. He supports his argument by attempting to establish that plaintiffs do not have a protectable interest, that their work has not acquired secondary meaning, and that there is no likelihood of confusion. As before, Solis–Betancourt's arguments misinterpret Lanham Act caselaw.

■ The Lanham Act "forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services." *Smith,* 648 F.2d at 603. In this case, plaintiffs argue that Solis–Betancourt misrepresented the origin of the design of the project by stating that he was the architect rather than the plaintiffs. This is what is referred to as "reverse passing off". Reverse passing off "occurs when a person removes or obliterates the original trademark, without authorization, before reselling goods produced by someone else." *Id.* at 605; *see also Roho v. Marquis,* 902 F.2d 356, 359 (5th Cir.1990)("Reverse palming off occurs with the direct misappropriation of the services or goods of another."). The reverse passing off is "express" if the defendant "removes the name or trademark on another party's product and sells that product under a name chosen by [him]." *Smith,* 648 F.2d at 605. Reverse passing off has been recognized as wrongful conduct because it involves an attempt to misappropriate another's talents and imposes the additional harm of depriving "the originator of the misidentified product . . . of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true

source of the satisfactory product." *Roho,* 902 F.2d at 359 (*quoting Smith,* 648 F.2d at 607).

To establish a Lanham Act violation based on "reverse passing off," the plaintiff must prove that (1) the product at issue originated with plaintiff, (2) the origin of the product was falsely designated by the defendant, (3) the false designation of origin was likely to cause consumer confusion, and (4) the plaintiff was harmed by the defendant's false designation of origin.

*Sun Trading Distributing Co. v. Evidence Music,* 980 F.Supp. 722, 727 (S.D.N.Y. 1997) (*citing Lipton v. Nature Co.,* 71 F.3d 464, 473 (2d Cir.1995)).

To establish their reverse passing off claim, plaintiffs have alleged in the complaint (1) that they are the ones who actually created the architectural design of the project, (2) that defendant Solis–Betancourt falsely designated the origin of the design by claiming in the article that he was the architect, (3) that the false designation would cause consumer confusion because potential clients would seek Solis–Betancourt's services instead of the plaintiffs' services after reading the article, and (4) that they have suffered harm due to Solis–Betancourt's misrepresentation. Taking the complaint's allegations as true, this is sufficient to establish a claim under the Lanham Act and to survive the motion to dismiss.

### 2. Copyright Act Claims

As to plaintiffs' Copyright Act claims, Solis–Betancourt argues that they should be dismissed because the AWCPA does not prohibit the taking or publication of photographs of the building, because VARA does not protect architectural designs, and because plaintiffs have not established the essential elements of a copyright infringement claim. In contrast with

his Lanham Act arguments, Solis–Betancourt's Copyright Act arguments do have merit.

Plaintiffs' first Copyright Act claim is that photographs depicting the architectural design of the project were published in the AD article without their permission. Not only is this permitted by the Copyright Act, as will be discussed below, but the complaint does not allege that Solis–Betancourt either made the photographs or published them. Thus any Copyright Act claims against Solis–Betancourt for the published photographs of the house must be dismissed.

VARA safeguards the rights attribution and integrity for the authors of works of visual arts. *See* 17 U.S.C. § 106A(a). A work of visual art is defined as a painting, drawing, print, sculpture or photographic images in a limited edition of 200 copies or fewer and which are signed and consecutively numbered by the author. *See* 17 U.S.C. § 101. VARA excludes from coverage technical drawings, such as architectural plans. *See Id.* It has further been held that an architectural work embodied in a building does not fall within the definition of work of visual art. *See, e.g. Pollara v. Seymour,* 344 F.3d 265, 270 n. 4 (2nd Cir.2003)("Similarly, Frank Gehry's Guggenheim Museum in Bilbao is a work, and it has recognized stature as art, but it could not be made to fit within the statute's definition of a 'work of visual art.' Buildings (as opposed to their design) are not subject to protection under the Copyright Act and are therefore excluded from VARA").

Accordingly, because the project does not fall under the definition of a work of visual art, any VARA claims against Solis–Betancourt must be dismissed.

Finally, Solis–Betancourt argues that plaintiffs have not established a claim for copyright infringement. To establish a claim for copyright infringement, plaintiffs must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). *See also T–Peg, Inc. v. Vermont Timber Works, Inc.,* 459 F.3d 97, 108 (1st Cir. 2006). To establish the second element, "plaintiff must show (a) that the defendant actually copied the work as a factual matter, either through direct evidence or through indirect means, and (b) that the defendant's 'copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works "substantially similar." ' " *T–Peg,* 459 F.3d at 108.

In this case, even assuming that plaintiffs have a valid copyright of the plans and of the design of the project, plaintiffs have failed to allege that Solis–Betancourt actually copied the plans or the design. The allegations are that he took credit for their work, not that he made copies of their plans or built another house using the same design. Thus, plaintiffs have not established the elements of a copyright infringement claim and it must also be dismissed.

3. *Supplemental State Law Claims*

Solis–Betancourt's arguments regarding plaintiffs' supplemental state law claims do not address the merits of the claims, but rather argue under the presumption that all federal claims have been dismissed, that the Court should decline to exercise supplemental jurisdiction, or if federal claims remain, that they are preempted by the Copyright Act. Both arguments, however, are without merit.

■ First, because the Court has concluded that plaintiffs' Lanham Act claims can survive the motion to dismiss, the Court will exercise its supplemental jurisdiction. And second, the state law copyright claims are not preempted. Solis–Betancourt's argument is centered around the possibility that the Court would retain the Copyright Act claims. He argues that copyright infringement claims under state law are preempted by the Copyright Act inasmuch as state law does not incorporate any elements beyond those required by the Copyright Act.

Because the Copyright Act, however, specifically excludes attribution rights over architectural works like the one at issue here, it does not seem to preempt state regulation of that area of copyright law. Thus, the Court will not dismiss plaintiffs' state law claims against Solis–Betancourt at this time.

### D. Advance's Motion for Summary Judgment

#### 1. Lanham Act Claims

■ In their complaint, plaintiffs characterize their claims against Advance as if it had itself infringed on their trademark by publishing the article which identified Solis–Betancourt as the architect of the project. The uncontroverted facts of the case, however, show that it was not Advance, but rather Solis–Betancourt, who engaged in reverse passing off by crediting himself for the design of the project. It is undisputed that, when asked who had been the architect on the project, Solis–Betancourt named himself. Advance merely relied on his representations; it did not advertise the project as its own. Thus, the Court cannot find that Advance has engaged in any infringing conduct by its actions in this case.

■ At best, plaintiffs could argue that Advance engaged in contributory infringement by printing an article falsely designating the origin of the project's design. "Contributory infringement liability, however, exists only 'if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement.'" National Basketball Ass'n v. Sports Team Analysis and Tracking Systems, 939 F.Supp. 1071, 1108 (S.D.N.Y.1996). See also Transdermal Products v. Performance Contract Packaging, 943 F.Supp. 551, 553 (E.D.Pa.1996)("holding that the Lanham Act allows contributory infringement when a manufacturer intentionally induces another to infringe a trademark."). The complaint in this case simply lacks any allegation that Advance either knew of the infringement or that it induced or provoked Solis–Betancourt to do so.

Moreover, contributory negligence cannot be established by the mere fact that Advance published an article which contained an infringing statement, especially when plaintiff cannot establish that they had any advance knowledge of the falsity of the statement. See, e.g., Display Producers v. Shulton, 525 F.Supp. 631, 633 (S.D.N.Y.1981)("The mere allegation that Shulton provided Ledan with the opportunity to engage in wrongful conduct does not, without more, state a claim for contributory infringement under the Lanham Act.").

■ Plaintiffs also argue that the Court should go further and establish that Advance had a duty to investigate Solis–Betancourt's claim that he had been the architect on the project. The Lanham Act, however, does not create such a duty to investigate and the Court finds nothing

in the Lanham Act that would support such a conclusion.

Therefore, plaintiffs' Lanham Act claims against Advance must be dismissed.

### 2. Copyright Act Claims

As discussed above, plaintiffs cannot establish a case under VARA nor of copyright infringement. Because the discussion of these claims in relation to Advance would be same as it was for Solis–Betancourt, the Court need not discuss them again here. Plaintiffs' AWCPA claims, however, are more properly addressed in relation to Advance, who is the one who made and published the photographs depicting the project's architectural design.

■ With the passing of the AWCPA, Congress established "a new category of copyright protection for works of architecture ... [but] did not afford architectural works full copyright protection." *Leicester v. Warner Bros.*, 232 F.3d 1212, 1217 (9th Cir.2000). For instance, the Copyright Act specifically permits the making, distribution, and display of photographs showing the building in which the work is embodied if it is located in or visible from a public place. *See* 17 U.S.C. § 120(a). Furthermore, unlike other copyright holders, the author or copyright owner of an architectural work does not have the right to prevent the alteration or destruction of such building. *See* 17 U.S.C. § 120(b).

Because the AWCPA specifically allows the taking and publishing of photographs of a building without the architect's consent, plaintiffs' claim lacks merit. Plaintiffs' only argument is that the project is not normally visible from a public area and that the pictures were not taken from a public area. Plaintiffs', however, have not presented evidence to show that the pictures were not taken from a public area. Accordingly, they have failed to create an issue of material fact that would prevent the Court from granting summary judgment. Therefore, plaintiffs' Copyright Act claims against Advance must also be dismissed.

### 3. Supplemental State Law Claims

Because no federal claims remain against Advance to ground jurisdiction, supplemental state law claims against Advance are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### E. EDI's Motion to Dismiss

■ The only cognizable federal claim against EDI would be for reverse passing off when it made reference in its article to the AD article and credited Solis–Betancourt as the architect of the project. Because EDI merely republished the information in AD, and because the Court has found that AD did not engage in any infringing conduct, it follows that any claims against EDI must also be dismissed. Even if EDI had not merely republished the information in the AD article, the same arguments discussed above would be applicable to it and no liability would attach under the Lanham Act.

Therefore, plaintiffs' claims against EDI must also be dismissed. Because no federal claims remain against EDI to ground jurisdiction, supplemental state law claims against EDI are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### F. The Homeowners

■ Although Ramirez–de–Arellano and Del Valle (the "homeowners") did not move for dismissal or summary judgment on the claims against them, the Court will raise the issue sua sponte. After a careful reading of the complaint, the Court cannot find that plaintiffs' claims against the homeowners have any merit and is inclined to rule that they must be dismissed. "Sua

sponte dismissals should be used sparingly, but are appropriate if it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile.'" *TMTV Corp. v. Pegasus Broadcasting of San Juan,* 490 F.Supp.2d 228, 235–37 (D.P.R.2007) (*quoting Chute v. Walker,* 281 F.3d 314, 319 (1st Cir.2002)). Nevertheless, the Court will allow the plaintiffs an opportunity to oppose the dismissal of the claims against the homeowners.

 Plaintiffs' Lanham Act claims against the homeowners must be dismissed because they have failed to allege that the homeowners engaged in any infringing conduct. Plaintiffs do not allege that the homeowners engaged in reverse passing off, or that they somehow induced others to do so. The allegations in the complaint seem to limit the homeowners' conduct to allowing Advance to publish an article with the false designation of evidence and that they allowed Advance to take photographs of their home. This is simply insufficient to establish liability under the Lanham Act.

As to the Copyright Act claims, plaintiffs do not allege that the homeowners copied the plans or the design of the project. Thus, taking the allegations in the complaint as true, the homeowner did not infringe on any of plaintiffs' copyrights and cannot be held liable under the Copyright Act.

Accordingly, the Court hereby orders the plaintiffs to show cause why their claims against the homeowners should not also be dismissed.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Solis–Betancourt's motion to dismiss, **GRANTS** Advance's motion for summary judgment and **GRANTS** EDI's motion to dismiss. Plaintiffs' Copyright Act claims against Solis–Betancourt are dismissed **with prejudice.** All of plaintiffs' federal claims against Advance and EDI are dismissed **with prejudice,** and their supplemental state law claims against Advance and EDI are dismissed **without prejudice.** Furthermore, plaintiffs are ordered to **SHOW CAUSE** within ten (10) days why their claims against the homeowners should not also be dismissed. There being no just reason for delay, the Court will enter partial judgment pursuant to Fed. R.Civ.P. 54(b).

**IT IS SO ORDERED.**